**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**JACOB D. YORK,**

       **Plaintiff,**

       **v.**                      **CASE NO.  20-3124-SAC**

**STATE OF KANSAS,**
**et. al,**

       **Defendants.**

**MEMORANDUM AND ORDER
AND ORDER TO SHOW CAUSE**

     Plaintiff Jacob D. York is hereby required to show good cause, in writing, to the Honorable Sam A. Crow, United States District Judge, why his claims should not be dismissed due to the deficiencies in Plaintiff's Amended Complaint that are discussed herein.

**I.  Nature of the Matter before the Court**

     Plaintiff brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.  The Court granted Plaintiff leave to proceed *in forma pauperis*.  (Doc. 5.)  At the time of filing, Plaintiff was housed at the Sedgwick County Adult Detention Facility in Wichita, Kansas ("SCADF"). On July 28, 2020, the Court entered a Memorandum and Order and Order to Show Cause (Doc. 8) ("MOSC") granting Plaintiff an opportunity to file an amended complaint to cure the deficiencies set forth in the MOSC.  Plaintiff filed an Amended Complaint (Doc. 13), and the Court entered a Memorandum and Order (Doc. 15) ("M&O") ordering the officials responsible for the operation of the SCADF to prepare a *Martinez* Report regarding Count II of Plaintiff's Amended Complaint.  The Court also found that Count I failed to state a claim for relief.  The *Martinez* Report has now been filed (Doc. 17) and this matter is before the Court for screening

Count II of Plaintiff's Amended Complaint.  The Court's screening standards are set forth in detail in the Court's MOSC.

Plaintiff alleges that he is being subjected to cruel and unusual punishment because his detention prevents him from practicing social distancing which is necessary due to the COVID-19 pandemic.  Plaintiff alleges that of the SCADF's inmate population of 1500, approximately 700 inmates have tested positive.  Plaintiff alleges that the risk of contracting COVID-19 is high because the bunks are only two feet apart instead of the six feet required for social distancing.

Plaintiff's Count II is based on his conditions at the SCADF in light of the positive COVID-19 cases.  Plaintiff alleges that the SCADF is housing positive and negative inmates together in Pod housing.  Plaintiff also alleges that he is being denied the proper means to clean because he is only allowed one shower per day and there is no bleach or disinfectant soap. Plaintiff also claims there is no outside recreation, the courts have stopped the speedy trial clock for the remainder of the pandemic plus 150 days, and there are no lawyer visits or religious worship opportunities.  Plaintiff alleges that there are no new face masks and inmates are only allowed to change their jumpsuits once per week.  Plaintiff alleges that the SCADF is housing inmates "untested from the streets," staff refuse to wear masks or gloves, and there is no contact tracing.  Plaintiff alleges that he is a pretrial detainee with pre-existing health issues "like heart defects & asthma."  (Doc. 13, at 9.)

## II. Discussion

The Tenth Circuit has held that a pretrial detainee's claims regarding conditions of confinement are governed by the Due Process Clause, and that "the Eighth Amendment standard

provides the benchmark for such claims." *Routt v. Howard*, 764 F. App'x 762, 770 (10th Cir. 2019) (unpublished) (quoting *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998)). [1]

"The Due Process Clause of the Fourteenth Amendment requires that a pretrial detainee be provided 'humane conditions of confinement by ensuring the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee his safety.'" *Routt*, 764 F. App'x at 770 (citing *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1188 (10th Cir. 2003) (ellipsis, brackets, and internal quotation marks omitted)); *see also Kelley v. Wright*, No. 2:19-CV-02278-JAR-JPO, 2019 WL 6700375, at *10 (D. Kan. Dec. 9, 2019). To establish liability, a pretrial detainee must show: "(1) the official[ ] knew of and disregarded an excessive risk to his health and safety, and (2) the alleged deprivation was sufficiently serious." *Routt*, 764 F. App'x at 770 (citing *Ledbetter*, 318 F.3d at 1188 (citation, brackets, and internal quotation marks omitted)). However, "jail conditions may be restrictive and even harsh without violating constitutional rights." *Id.* (citing *Ledbetter*, 318 F.3d at 1188 (internal quotation marks omitted)).

---

[1] The court in *Kelley* noted that:

> In *Kingsley v. Hendrickson*, "the Supreme Court held that the Eighth Amendment standard for excessive force claims brought by prisoners, which requires that defendants act 'maliciously and sadistically to cause harm,' does not apply to Fourteenth Amendment excessive force claims brought by pretrial detainees." *Estate of Vallina v. Cty. of Teller Sheriff's Office*, 757 F. App'x 643, 646 (2018) (citing *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2475 (2015)); *see also Burke*, 935 F.3d at 991 n.9. The "[c]ircuits are split on whether *Kingsley* alters the standard for conditions of confinement and inadequate medical care claims brought by pretrial detainees," with the Tenth Circuit not yet having decided the issue. *Vallina*, 757 F. App'x at 646–47 (noting that the Second, Seventh, and Ninth Circuits have found *Kingsley* displaces the prior subjective inquiry for conditions of confinement and inadequate medical care claims, while the Fifth, Eighth, and Eleventh Circuits have held that *Kingsley* applies only to excessive force claims).

*Kelley v. Wright*, No. 2:19-CV-02278-JAR-JPO, 2019 WL 6700375, at n.74 (D. Kan. Dec. 9, 2019).

On September 23, 2020, Plaintiff filed a notice with the Court indicating that he believes he has contracted COVID-19.  (Doc. 16.)  Plaintiff stated that he believes he is positive because he cannot smell the bathroom or fellow inmates.  He indicates that he tested negative twice and was not given an additional test.  Plaintiff seeks outside testing and medical treatment from an outside provider.

The officials responsible for the operation of the SCADF have filed a *Martinez* Report. The *Martinez* report developed as a means "to ascertain whether there is a factual as well as a legal basis for [a] prisoner's claims." *Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987).  The report "is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (citing *Sampley v. Ruettgers*, 704 F.2d 491, 493 n. 3 (10th Cir. 1983)).  The Court has examined the commendably thorough *Martinez* Report and, for the reasons that follow, is considering the dismissal of this action.  Plaintiff will be given an opportunity to show cause why dismissal should not be entered.

The *Martinez* Report provides in relevant part that:

> 5.      Speaking specifically to Plaintiff, he is not now, and never has been, infected with COVID-19.  He has been tested twice and was negative each time.  Attachment A at Paragraph 4.
> 6.      As of this writing, there are no known positive cases of COVID-19 in SCADF.  Attachment A at Paragraph 15.
> 7.      Plaintiff has not sought medical care of any kind since February 2020, and at that time, it was for chest pains.  At no time has he sought medical attention for symptoms of coronavirus. Attachment A at Paragraph 7.
> 8.      SCADF has adopted policies that are intended to prevent the spread of COVID-19 within the facility.  These policies involve reducing personal contact with individuals from outside of SCADF, removing inmates who have tested positive from the general population and segregating them in separate Pods, and following CDC procedures.  These policies were adopted

strictly as a safety measure, and [are] not intended to be punitive in fashion. Attachment A at Paragraph 5.

9.      Paragraph 8 of Attachment A goes into many of the specific steps taken by SCADF to prevent the spread of COVID-19. These include the use of masks and other PPE, placement of sanitizing cleaner in all inmate areas for use as needed, Stericleaning the entire facility on four occasions since March 2020 (including most recently on October 6, 2020), reduction of the inmate population as permitted by court orders, encouraging social distancing wherever possible, and so on.

10.     Sedgwick County has retained an independent contractor to provide medical care to all inmates. Plaintiff has not reported any coronavirus symptoms to the Clinic during his incarceration. Attachment A at Paragraph 7.

11.     While certain in-person activities for inmates have been curtailed during the pandemic, this is largely to prevent infected persons from reintroducing COVID-19 into SCADF. However, inmates have been provided with opportunities to consult with counsel in-person, via video calls, and secure mail, all free of charge. Worship services are provided by minister visits, where the inmate and minister are separated via a glass partition, but these services are available upon request. Attachment A at Paragraphs 10–11.

12.     No other inmate has filed a lawsuit similar in type to that brought here by Plaintiff. There are no other pending lawsuits involving claims related to incarceration conditions directly invoking the COVID-19 pandemic. Attachment A at Paragraph 14.

13.     Colonel Jared Schechter of the Sedgwick County Sheriff's Department undertook a review of the records available and there are not now, and never have been 700 positive cases of COVID-19-positive inmates at SCADF at one single time. The incorrect numbers suggested by Plaintiff relate to cumulative numbers of cases that have been in-and-out of the facility since the onset of the pandemic. SCADF has always attempted to limit the exposure of non-infected inmates to persons infected with coronavirus. Attachment A at 15.

14.     The policies and procedures adopted by SCADF were developed in consultation with medical authorities with an eye toward providing humane conditions of incarceration and to staunch any spread of the virus within the facility. Officials have worked diligently to provide safe and secure shelter, medical care, and living conditions to the inmates, while still attempting to ensure that COVID-19 does not present a danger to those inmates. Attachment A at 12.

(Doc. 17, at 3–5) (citing Attachment A, Affidavit of Jail Administrator for Sedgwick County Adult Detention Facility).

Plaintiff fails to show that the Defendants knew of and disregarded an excessive risk to his health and safety.  The *Martinez* Report provides that policies and procedures were in place at SCADF to protect inmates housed there.  Plaintiff alleges that he was transferred to the Sumner County Jail and the transfer has deprived him of due process because he has not been able to respond to the *Martinez* Report.  (Doc. 19, at 1–2.)  The Court will grant Plaintiff an opportunity to respond to the *Martinez* Report and to show good cause why his Amended Complaint should not be dismissed for failure to state a claim.

The Court found in the MOSC that Plaintiff's claim that he is entitled to release is without merit.  "[H]abeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release."  *Heck v. Humphrey*, 512 U.S. 477, 481 (1994) (citing *Prieser v. Rodiguez*, 411 U.S. 475, 488-490 (1973)).  Therefore, Plaintiff's request for release is not cognizable in this civil rights case.  If Plaintiff wishes to pursue release, he must file a petition for writ of habeas corpus or seek relief in his underlying criminal case.  Plaintiff has filed a notice with the Court, indicating that he is not sure how to file a habeas action.  (Doc. 16, at 3.)  The Court will direct the clerk to provide Plaintiff with forms and instructions for filing a petition for writ of habeas corpus.

Plaintiff also sought injunctive relief and "compensatory, punitive & nominal damages." (Doc. 13, at 11.)  On October 19, 2020, Plaintiff filed a notice with the Court (Doc. 19) noting that he has been transferred to the Sumner County Jail.  Because Plaintiff is no longer housed at the SCADF, his request for injunctive relief is moot and therefore denied.  Because Plaintiff's request relates solely to alleged conditions at the SCADF, the Court would be unable to provide

Plaintiff with effective relief and his requests for injunctive relief are moot.  Article III of the Constitution extends the jurisdiction of federal courts only to "live, concrete" cases or controversies.  *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010).  "Article III's requirement that federal courts adjudicate only cases and controversies necessitates that courts decline to exercise jurisdiction where the award of any requested relief would be moot—i.e. where the controversy is no longer live and ongoing."  *Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 (10th Cir. 1994), *superseded by statute on other grounds*. Consequently, "[m]ootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction."  *Rio Grande*, 601 F.3d at 1109 (internal quotations and citations omitted).

"Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief."  *O'Shea v. Littleton*, 414 U.S. 488, 495 1974).  The Tenth Circuit has applied this principle to § 1983 actions brought by inmates, and held that an inmate's transfer from one prison to another generally renders moot any request for injunctive relief against the employees of the original prison concerning the conditions of confinement.  *See Green v. Branson*, 108 F.3d 1296, 1299–1300 (10th Cir. 1997); *see also Wirsching v. Colorado*, 360 F.3d 1191, 1196 (10th Cir. 2004) (inmate's release from prison moots his claims for declaratory and injunctive relief); *McAlpine v. Thompson*, 187 F.3d 1213, 1215 (10th Cir. 1999) (recognizing prisoner's release from prison mooted his § 1983 claim for injunctive relief); *Love v. Summit County*, 776 F.2d 908, 910 n.4 (10th Cir. 1985) (noting transfer of inmate to different prison renders his § 1983 claim for injunctive relief moot); *see also Pfeil v. Lampert*, 603 F. App'x 665, 668 (10th Cir. 2015) (unpublished) (holding that "RLUIPA claims regarding prison conditions become moot if the inmate plaintiff is released from custody.") (citations omitted).

The mootness doctrine is based on the reality that even if the inmate receives injunctive relief, the defendants from the former prison would be unable to provide the relief to plaintiff. Because Plaintiff is no longer detained at the SCADF, his claims for injunctive relief are moot and subject to dismissal.

Plaintiff's request for compensatory damages is barred by 42 U.S.C. § 1997e(e), because Plaintiff has failed to allege a physical injury.  Section 1997e(e) provides in pertinent part that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).  Plaintiffs also seeks punitive damages, which "are available only for conduct which is 'shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Searles v. Van Bebber*, 251 F.3d 869, 879 (10th Cir. 2001) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)).  Plaintiff presents no plausible basis for a claim of punitive damages because he alleges no facts whatsoever establishing that any defendant acted with a sufficiently culpable state of mind.  Plaintiff's request for punitive damages is subject to dismissal.

Plaintiff has filed a Motion Requesting the Appointment of Counsel (Doc. 18), asking the Court to appoint counsel because he is exhibiting symptoms of COVID-19, he is unable to investigate his case, he was transferred to a different facility, and he does not have access to an "up-to-date" law library.

The Court has considered Plaintiff's motion for appointment of counsel.  There is no constitutional right to appointment of counsel in a civil case.  *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989); *Carper v. DeLand*, 54 F.3d 613, 616 (10th Cir. 1995).  The decision whether to appoint counsel in a civil matter lies in the discretion of the district court.  *Williams v.*

*Meese*, 926 F.2d 994, 996 (10th Cir. 1991). "The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel." *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006) (quoting *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004)). It is not enough "that having counsel appointed would have assisted [the prisoner] in presenting his strongest possible case, [as] the same could be said in any case." *Steffey*, 461 F.3d at 1223 (quoting *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995)).

In deciding whether to appoint counsel, courts must evaluate "the merits of a prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Hill*, 393 F.3d at 1115 (citing *Rucks*, 57 F.3d at 979). The Court concludes in this case that (1) it is not clear at this juncture that Plaintiff has asserted a colorable claim against a named defendant; (2) the issues are not complex; and (3) Plaintiff appears capable of adequately presenting facts and arguments. The Court denies the motion without prejudice to refiling the motion if Plaintiff's Amended Complaint survives screening.

To the extent Plaintiff takes issue with his transfer or with his access to an "up-to-date" law library, such claims must be brought after he has exhausted the facility's administrative remedies. However, the Court notes that inmates do not have the right to be housed in a particular facility. Plaintiff does not have a constitutional right to dictate where he is housed, whether it is which facility or which classification within a facility. *See Schell v. Evans*, 550 F. App'x 553, 557 (10th Cir. 2013) (citing *Meachum*, 427 U.S. at 228–29; *Cardoso v. Calbone*, 490 F.3d 1194, 1197–98 (10th Cir. 2007). Moreover, jail officials are entitled to great deference in

the internal operation and administration of the facility.  *See Bell v. Wolfish*, 441 U.S. 520, 547–48 (1979).

Likewise, any claim regarding access to an "up-to-date" law library would require an actual injury.  The right to access the courts does not guarantee inmates the right to a law library or to legal assistance, but merely to "the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Lewis v. Casey*, 518 U.S. 343, 350–51 (1996) (quoting *Bounds v. Smith*, 430 U.S. 817, 825 (1977)).  The right to access the courts is "only [the right] to present . . . grievances to the courts," and does not require prison administrators to supply resources guaranteeing inmates' ability "to litigate effectively once in court" or to "conduct generalized research."  *Id*. at 354, 360.

## III.  Response Required

Plaintiff is required to show good cause why his Amended Complaint should not be dismissed for the reasons stated herein and in the Court's MOSC at Doc. 8.  Failure to respond by the deadline may result in dismissal of this matter without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED BY THE COURT** Plaintiff is granted until **November 18, 2020,** in which to show good cause, in writing, to the Honorable Sam A. Crow, United States District Judge, why Plaintiff's Amended Complaint should not be dismissed for the reasons stated herein and in the Court's MOSC at Doc. 8.

**IT IS FURTHER ORDERED THAT** Plaintiff's Motion Requesting the Appointment of Counsel (Doc. 18) is **denied without prejudice.**

The Clerk is directed to provide Plaintiff with forms and instructions for filing a petition for writ of habeas corpus.

**IT IS SO ORDERED.**

**Dated October 28, 2020, in Topeka, Kansas.**

<u>**s/ Sam A. Crow**</u>
**Sam A. Crow**
**U.S. Senior District Judge**