IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JACOB D. YORK,

    **Plaintiff,**

    v.                                    CASE NO. 20-3124-SAC

STATE OF KANSAS,
et. al,

    **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The Court granted Plaintiff leave to proceed *in forma pauperis*. (Doc. 5.) Plaintiff is a pretrial detainee housed at the Sedgwick County Adult Detention Facility in Wichita, Kansas ("SCADF"). On July 28, 2020, the Court entered a Memorandum and Order and Order to Show Cause (Doc. 8) ("MOSC") granting Plaintiff an opportunity to file an amended complaint to cure the deficiencies set forth in the MOSC. Plaintiff filed an Amended Complaint (Doc. 13), and the Court entered a Memorandum and Order (Doc. 15) ("M&O") ordering the officials responsible for the operation of the SCADF to prepare a *Martinez* Report regarding Count II of Plaintiff's Amended Complaint. The Court also found that Count I failed to state a claim for relief. The *Martinez* Report was filed on October 13, 2020. (Doc. 17.) On October 28, 2020, the Court entered a second Memorandum and Order and Order to Show Cause (Doc. 20) ("MOSC II"), granting Plaintiff an opportunity to show good cause why his Amended Complaint should not be dismissed for the reasons stated in the MOSC and MOSC II. This matter is before the Court on Plaintiff's Response (Doc. 28).

The Court found in the MOSC that Plaintiff's claim that he is entitled to release is

1

without merit. "[H]abeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release." *Heck v. Humphrey*, 512 U.S. 477, 481 (1994) (citing *Prieser v. Rodriguez*, 411 U.S. 475, 488-490 (1973)). Therefore, Plaintiff's request for release is not cognizable in this civil rights case. If Plaintiff wishes to pursue release, he must file a petition for writ of habeas corpus or seek relief in his underlying criminal case.

However, this Court has recently held in a habeas action that: "The question of whether a [Kansas] state pretrial detainee should be released from detention during the COVID-19 pandemic is a question for the State of [Kansas] to decide in the first instance. Unless and until Petitioner has been denied release by the [Kansas] courts, officials, or legislature, and that denial constitutes a violation of established rights under the federal Constitution, laws, or treaties, Petitioner may not seek habeas corpus relief from this federal court." *Burnett v. Sedgwick Cty. Bd. of Comm'rs*, Case No. 20-3143-SAC (D. Kan. March 15, 2021) (Doc. 8, at 2–3) (quoting *Soto v. Governor of New Mexico*, No. CV 20-00317 JCH/KK, 2020 WL 1853050, at *3–4 (D.N.M. Apr. 13, 2020) (citing *United Mine Workers of Amer. v. Gibbs,* 383 U.S. 715, 726 (1966) (under principles of comity, the state courts should be the first courts to decide questions of state law); *Hicks v. Oklahoma,* 447 U.S. 343, 346 (1980); *Aycox v. Lytle,* 196 F.3d 1174, 1180 (10th Cir. 1999)).

Count II of Plaintiff's Amended Complaint is based on the conditions at SCADF in light of the COVID-19 pandemic. The Tenth Circuit has held that a pretrial detainee's claims regarding conditions of confinement are governed by the Due Process Clause, and that "the Eighth Amendment standard provides the benchmark for such claims." *Routt v. Howard*, 764 F.

App'x 762, 770 (10th Cir. 2019) (unpublished) (quoting *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998)).

"The Due Process Clause of the Fourteenth Amendment requires that a pretrial detainee be provided 'humane conditions of confinement by ensuring the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee his safety.'" *Routt*, 764 F. App'x at 770 (citing *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1188 (10th Cir. 2003) (ellipsis, brackets, and internal quotation marks omitted)); *see also Kelley v. Wright*, No. 2:19-CV-02278-JAR-JPO, 2019 WL 6700375, at *10 (D. Kan. Dec. 9, 2019). To establish liability, a pretrial detainee must show: "(1) the official[ ] knew of and disregarded an excessive risk to his health and safety, and (2) the alleged deprivation was sufficiently serious." *Routt*, 764 F. App'x at 770 (citing *Ledbetter*, 318 F.3d at 1188 (citation, brackets, and internal quotation marks omitted)). However, "jail conditions may be restrictive and even harsh without violating constitutional rights." *Id.* (citing *Ledbetter*, 318 F.3d at 1188 (internal quotation marks omitted)).

"[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). But, "prison officials who actually knew of a substantial risk to inmate health or safety may [nonetheless] be found free from liability if they responded *reasonably* to the risk, even if the harm ultimately was not averted." *Id*. at 844 (italics added).

The Court found in the MOSC II that Plaintiff failed to show that the Defendants knew of and disregarded an excessive risk to his health and safety. The *Martinez* Report sets forth in detail the policies and procedures that were in place at SCADF to protect inmates housed there.

At the time of filing the *Martinez* Report, there were no known cases of COVID-19 at SCADF. (Doc. 17, Attachment A at Paragraph 15.)  Plaintiff does not allege that no measures are being taken to prevent or address COVID-19.  In fact, he complains about in-person services being limited, expresses concern about breathing the cleaning supplies being used, and notes that he has been tested twice for COVID-19 and quarantined.  Plaintiff argues that the measures are inadequate.

In his response, Plaintiff argues that he is not allowed to exercise proper social distancing at SCADF.  Plaintiff alleges that SCADF has moved to a "non-test" strategy to lower the amount of positive cases.  Since filing his Amended Complaint, Plaintiff has alleged that he believes he has contracted COVID-19, despite two negative tests.  Plaintiff argues in his response that an "outside doctor" never spoke to Plaintiff or saw to his reported symptoms.  (Doc. 28, at 2.) Plaintiff argues that jail officials only locked Plaintiff and his "bunky" down for 56 hours and did not test his cell mate.  Plaintiff alleges that once an inmate reports symptoms, it takes approximately 72 hours before a sick call is answered, and inmates fear reporting symptoms due to the chance of being locked down without seeing a doctor.  *Id*. at 2–3.  Plaintiff alleges that the tests are administered by untrained nurses or staff and his test was taken with a "dry Q-tip" and then was transported uncovered and unsealed into a room out of sight to be logged and bagged. Plaintiff was told 4 days later that he was "recovered or negative." *Id*. at 3.  Plaintiff states that he doubts his test was even taken.  *Id*.  Plaintiff reargues that the cleaning supplies are inadequate.  Plaintiff takes issue with the facility suspending various in-person activities, like religious worship and visitation.  Plaintiff also argues that proper contact tracing is not taking place.

At the time of filing the *Martinez* Report on October 13, 2020, the officials reported that Plaintiff had not sought medical care of any kind since February 2020, and at that time, it was for chest pains.  The Report provides that "[a]t no time has he sought medical attention for symptoms of coronavirus."  (Doc. 17, Attachment A at Paragraph 7.)  In his response, Plaintiff alleges that on November 29, 2020 (after the *Martinez* Report was filed), at approximately 8:25 p.m. Plaintiff told Dep. Lee that he was experiencing symptoms associated with COVID-19.  (Doc. 28–5, at 14.)   Plaintiff informed Lee that he could not smell or taste anything and felt like he had pressure on his chest.  *Id*.  Lee responded that he would call the clinic after rounds.  *Id*.  Plaintiff alleges that he went to the clinic at approximately 10:13 p.m. that evening, and RN Cynthia took Plaintiff's vitals and made a record and told Plaintiff he would be called down to the clinic for sick call the next morning.  *Id*.  Plaintiff alleges that he was called down to the clinic and received a "Make Shift test by Materials effective, i.e., Nose Swap from a dry Q-Tip & denied access to view the procedures conducted by the unknown Nurse whom administered this supposal test."  *Id*.  Plaintiff alleges that he was then sent back to his Pod to be placed on quarantine lockdown along with his "untested bunky" for "the better of 4 days with no observation or check-ups for temperature readings."  *Id*.

"[D]eliberate indifference to a pretrial detainee's serious medical needs includes both an objective and a subjective component."  *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020) (finding that although a pretrial detainee's claim is based on the Fourteenth Amendment, the same standard for Eighth Amendment claims applies).  To establish the objective component, "the alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension."  *Id*. at 989–90 (citations omitted).

The Supreme Court has insisted upon actual knowledge: "the official must *both* be aware

of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference.*" *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (emphasis added). Plaintiff's claim suggesting an apparent disagreement over course of treatment, however, does not rise to the level of a constitutional violation. *Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010). The "negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

Plaintiff has failed to show that the officials were both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that they also drew the inference. Plaintiff's claims suggest, at most, negligence. Plaintiff's response fails to address all the deficiencies set forth in the MOSC and MOSC II and fails to show good cause why his Amended Complaint should not be dismissed for failure to state a claim.

**IT IS THEREFORE ORDERED BY THE COURT** that this matter is **dismissed** for failure to state a claim.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss (Doc. 23) is **denied as moot.**

**IT IS SO ORDERED.**

**Dated March 18, 2021, in Topeka, Kansas.**

<u>s/ Sam A. Crow</u>
**Sam A. Crow**
**U.S. Senior District Judge**